Good morning, Your Honors. Calvin Davis for Defendants and Appellants, Guardian Protection Products, Inc. and RPM Wood Products Finishes, Inc. With me at council table is my colleague Aaron Rudin. I'd like to reserve five minutes for rebuttal. Three? Three is fine. The district court below committed a number of fundamental errors, all based on its application of the wrong legal standard. Three errors in particular. It failed to separate the independent defendants into their own individual prevailing party determination. Forgive me, counsel. I know you asserted that in your brief. As I look at what the court did, I thought the court separated each claimed cause of action with a fair amount of specificity. What am I missing? So, Your Honor, what the court needed to do is, so GIS is the plaintiff. You have two independent defendants, RPM and Guardian, as Your Honor knows.  The court needs to compare GIS versus Guardian, and then needs to compare GIS versus RPM, which the court did not do. The court put them together in a tally, and at the end said, well, if you compare what GIS prevailed on versus what the defendant's outcome was, then GIS is the prevailing party. But that's not the analysis. You have to do them separately under the Brown-Bark case and its related cases. You have to take them in two separate columns, GIS versus Guardian, GIS versus RPM. And that, the court unquestionably did not do, because in the end, it combined them in its tally and said — Is that, if you will, structural error? In other words, if the court did it mentally but didn't lay it out specifically in its order, is that fatal to your opponent's position? Yes, we believe that is fatal, Your Honor. And what case would you cite for that? I think it's the Sue v. Ibarra case, which is basically how 1717 is supposed to be interpreted under California — I understand that, but what authority do you have that says that each individual defendant has to be segregated? What the court did, it did it by cause of action. Right. You're saying that it has to be segregated by defendants. So let's say you had 100 defendants in a case. You're saying, if I understand you correctly, that the court would have to say, okay, X versus Y, X versus Y plus 1, et cetera, et cetera, for all 100 cases rather than looking at the cause of action. Do I understand you correctly? Correct that you have to analyze them separately by independent defendant. You can't combine defendants. The authority for that is the Brownbart case and the Burkhalter case, Your Honors, which both specifically reach that holding and says you cannot combine defendants. Well, the court has to consider it. But what I'm understanding you to say is that the court has to, in effect, in Hike-Berba, lay it out specifically in writing as to each defendant, as opposed to considering it with respect to the individual defendants per cause of action. I think, Your Honor, you do have to set them out separately. And I think it's more than just setting them out separately. I think in this case, the court not only did not set them out separately, but by intertwining the defendant's analysis with each other, she completely confused the application of the legal standard. And the legal standard under Sue v. Ibarra is you compare the relief requested to the relief granted. And you have to do that individually. You can't mix defendants in a circumstance like that. So under those circumstances, we believe the first error is a failure to properly separate the defendants for this analysis. Can't we tell by the court's order, you know, plainly interpreted that the court knew what it was doing claim by claim rather than party by party? Isn't it clear from the outcome of the analysis that he was doing exactly that? Well, respectfully, Your Honor, we don't believe so. Because if you look at the GIS versus RPM part of the ledger, GIS sued RPM on eight different claims. They prevailed on zero. It was an unqualified defense victory on behalf of RPM. But yet, the court, by combining defendants here between Guardian and RPM, decided that RPM was not a prevailing party, essentially because I think it believed that Guardian wasn't a prevailing party when you add all these things together and the tally it did in its conclusion. But it's a clear error of law from our perspective based on Sue v. Barra, Brownbark, and Burkhalter that you can look at a case where an independent defendant has prevailed on a $72 million lawsuit against it for eight different causes of action, get a verdict in your favor, win potentially claims on MSJs, on trial motions, and an abandonment, and say that that client, that defendant, which was sued for $72 million and ends up with no recovery for GIS, can conceivably not be a prevailing party under the established law. It's a clear error of law. Let me ask you, Counselor, obviously, one of the factors here is the so-called abandoned claims. Do you agree that there's no Ninth Circuit law or California Supreme Court law on how we're supposed to treat abandoned claims for purposes of 1717? We — I agree that there are no California Supreme Court cases. There are very persuasive California court of appeals cases. Right. And the law on that is, Your Honor, in terms of the — in terms of the Federal courts interpreting California law, unless there is a reason to believe that the California Supreme Court would not follow those court of appeals cases, the court should view that as — as binding. And the BAP did the — said the same thing, right? Pardon me, Your Honor? BAP. The Bankruptcy Appellate Panel said the same thing. Exactly. Exactly. But that cuts against you, does it not? No. I don't believe so, Your Honor, because the cases that we're citing on abandoned, right, have — there's a couple of — there's a couple of parameters to this. First of all, the abandoned party issue in this case arises out of the Court's misreading of 1717b2, okay? The only reason anyone cares about abandoned in this case is because there were claims that were abandoned. The Court found those were dismissed with prejudice, but they were voluntary dismissals. And so, therefore, GIS and the Court agreed, said if it's a voluntary dismissal, then there is no prevailing party for purposes of 1717b2. But that's not what happened here, and that's not how 1717b2 is — is — is — So you're saying — you're saying that these several cases, which I think is what you're focusing on, is not a voluntarily dismissed case? No. There are — it's not — it's not a voluntary dismissal because the cases hold under the D&J case v. Ferro, which I'm specifically thinking of, says that a party has to make an affirmative representation on the record, affirmatively manifest their intent to dismiss or abandon the claim. That did not happen here. And what case is this? D&J v. Ferro. And so what happened here was that at the beginning of the trial, GIS said in its pretrial filings it was not abandoning any claims. Case went forward. Case was tried. They did not present evidence on a number of claims. Then, after jury verdict, post-trial briefing, they say, okay, we're abandoning — we're abandoning a number of our claims. We tell the court — Did they lose on those claims in the trial? They did not present any evidence of it. They didn't put it in a jury verdict. And they didn't — and they didn't put it into their jury instructions. But they never abandoned it prior to trial. They just did nothing with it in that first trial. They just did nothing with it. In the first trial. They did nothing with it at the first trial. But they didn't announce any — that they were going to do anything. They didn't say — they made no affirmative manifestation. So your argument is it's too late then after trial to say we're abandoning it for it to be a voluntary dismissal. Exactly right. So it can't be a voluntary dismissal. And, in fact, the court agreed with us the first time around when we said, Your Honor, they're abandoning us after trial. They — that is not a voluntary — that should not be a voluntary dismissal. That should be an involuntary dismissal with prejudice. And the court agreed with us at that time, saying I don't want these claims re-litigated. And GIS's argument at the time was we want to preserve our right to refile these cases. And so we want a dismissal without prejudice. Well, that's the opposite of an affirmative manifestation, that you're abandoning or dismissing your claim. It's an affirmative manifestation. You're trying to reserve the right to file the case again. So — Can I bring you back to your first argument? Because I do — I think you're — I think you're right that the — the district court had to do party by party. But what do we do if — it seems like he did both, or the district court did both, that he did it party by party, found that RMP is not the prevailing party, or neither — no one's a prevailing party as to the claims against RMP, but then does have that strange sentence about tallying the number of claims that confuses the issue. But if we just excise that one sentence about tallying claims, then it's a very straightforward opinion that he tallied the claims against — I mean, so you — you looked at the claims against one party, against RPM, and that — just no prevailing party. What do we do with that? If we just took away that one sentence of tallying the number of claims, then it would be totally appropriate. Well, I respectfully disagree, Your Honor. First of all, the district court specifically says this tallying is, quote, part of the analysis. So I don't think you can just exclude it from analysis when she says it's part of the analysis. She says, tallying the number — this is ER-19. This is —  One ER-19. Tallying the number of claims on which each party prevailed militates towards a finding that GIS is the prevailing party, having successfully prosecuted and defended a total of eight claims against Guardian as compared to Guardian-5 claims and RPM-4 claims. Such a rudimentary calculation is only part of the analysis. And then when you go to the second page, ER-20, it says the court finds that GIS, having achieved greater relief than defendants, plural, in the action on the contracts, is the prevailing party and therefore entitled to attorney's fees under Section 1717. So the RPM analysis, which we strongly believe is incorrect, infects the entire analysis here because she's mixing it up with the rest of her analysis. Assuming that we agree with you on that point, then, wouldn't we — could we just affirm the cost against Guardian but then remand on RPM? Okay. So, Your Honor, we do believe the court should reverse with respect to RPM and direct the district court to enter an order that RPM is the prevailing party. With respect to the Guardian versus GIS part of the case, it's a slightly different analysis and we're not — But the primary point that you could take them separately, that we could rule against RPM just separately than Guardian. Yes. I think, Your Honor, because the ruling on RPM is intertwined with the ruling on Guardian, I think that's difficult. I think that's — I think that would be difficult to do. We do have independent arguments here. We do think the RPM issue poisons the Guardian versus GIS argument. But I also think —  I think because, based on the language I just read, that there is an intertwining between the two and that when you get to the tallying and the comparing in which she says, quote-unquote, defendants, it's really she's combining the entire claim. Counsel, you wanted to save three minutes, but let me just ask you, when you come up again, as you know, 1717 gives a fair amount of discretion to the court. And I'd be interested in your take on how much of what you assign as error could be attributed to the district court exercising its discretion. Thank you, Your Honor. I will address that. Thank you. Very well. Now, I have — I don't think you're Dylan Savage, are you? I am. Are you really? Okay. I apologize. I did not know that. Okay. There you are. Your Honor, that is certainly not the first time that has happened to me. Okay. Okay. Very well. Good morning, Your Honors. Dylan Savage on behalf of GPP, Inc., which we refer to in this case as GIS. May it please the Court. I do have some prepared remarks for Your Honors, but I think I will just start instead by going through the three primary issues that Your Honors have addressed with Mr. Davis, the first being the appellant's claim regarding the failure to separate the defendants in the Section 1717 analysis, the second being GIS and RPM specifically, and the third being the abandoned claims issue under Section 1717. With respect to the first issue, I believe that Your Honors' commentary with Mr. Davis reflects our position. What she counsels is that in this whole analysis, we are not to elevate forum over substance, and we believe that in the appellant's arguments regarding the alleged failure to separate, that's what they're doing with respect to the district court's order. We see very plainly that the district court goes to great lengths to analyze the defendants separately, whether there was any party prevailing between GIS and Guardian on the one hand and as between GIS and RPM on the other hand, reminding— As you know, Mr. Davis cited a case that he believes requires the district court or magistrate judge to segregate the two defendants in its analysis. What's your response to that claim? Your Honor, we believe that the court did do that, and we can see that in at least two ways in the court's analysis. The first is that with respect to four causes of action where the results differed between Guardian and RPM, the court analyzes both of those defendants separately. That's very plain in the language of the order. The second is, as regards equitable considerations, we see the court analyzing equitable considerations distinctly between the two defendants. Namely, I would point your Honors to footnote, I believe it's 17 in the district court's order where it's discussing specific considerations with respect to RPM. With regard to the Brown-Bark case, the appellants indicate that that was overlooked by the district court. That was cited in their papers. So any points of law that were necessary to be considered, we believe the district court did. It was also the focus of their motion for reconsideration. So to the extent that any points the district court believed it had overlooked, it certainly could have considered them then. So basically, from your perspective, the argument made by Mr. Davis has already been made to the district court and rejected? That is part of our position, but we also believe that it just fails on its merits because the district court's opinion so clearly separates the analyses with respect to each of the defendants. So what do you do with that one sentence about telling the number of claims on which each party prevailed, militates towards a finding of GIS in the prevailing party? The court itself is saying in that very same, if not in that sentence, in one of the surrounding sentences, that this is a rudimentary analysis. It's only part of its analysis. So the claim tally is in furtherance. Well, do you agree that that's wrong, that that type of analysis is wrong? We wouldn't agree that simply it isn't incorrect to take a look at the outcomes on the causes of action, as the court has done, and then take a look at how that turns out as regards to the defendants. And one of the appellant's arguments is that it was incorrect to go claim by claim, even if in furtherance of the ultimate prevailing party analysis. I would point your honors to Johnston and Baldain and the district court.  So I'm sorry. I don't understand. Was it right to do this analysis or wrong? We believe that the claim portion of this analysis was correct. Yes. The claim by claim. Yes. Everyone agrees that that's right. Yes. But what about this tallying analysis? The tally is not dispositive, and so we don't believe that it is an incorrect aspect of the court's analysis. We think that it was... If it was dispositive, you think it would be wrong? I would... I don't believe that if it was dispositive, it would be wrong either. But in this... Well, if all the district court said was tallying the claims, you know, and then did five versus four, that would be error under a shoe, right? Well... Or shoe, shoe, shoe. Respectfully, your honor, that's not what the district court did. It went on to consider...  Well, I'm just... That's why I'm trying to tease out if this analysis is really correct or incorrect, or should we just push it aside or ignore it? I don't think... I don't think it's an error. I don't know what the argument is. I do think that it is a harmless error. Okay. That makes much more sense. Yes. To the extent that any error was implicated in the claim tally portion of this, we do believe that it is harmless given the nature of the court's opinion. But that have also been a factor in the district court's equitable analysis of the entire issue? The number of claims? The way it approached it. Could it have been the court's, if you will, reasoning as to how it arrived at its equitable determination? We think that the claim tally does not bear greatly on its equitable determination, specifically because what we see in the order is a very careful consideration, not just of numbers, but of the core nature of the contract claims. For example, with respect to the claims on which GIS undoubtedly prevailed after the second trial, those were the heart of this case, and the allegations on which the entire case was based. We see the court looking to that and not just looking to numbers. Was it another possibility that the district court just speculated that there are alter egos of each other, and then so therefore consider them together? We don't think that, Your Honor. We think that the court's analysis is very clear with respect to the two different defendants and did not make any error in assuming that just because GIS prevailed against Guardian, that also RPM was being brought along for the ride. And also, to that point, we don't believe that even if error is found with respect to the claim tally or the language regarding defendants, that that has any effect on the district court's decision with respect to Guardian, which was another question. I mean, there's the other statement on ER-20 where it says that the court finds that GIS having achieved greater relief than the defendants, which lumps them together, and so therefore is the prevailing party. So at that point, it does seem that the district court is lumping them together. Yes, Your Honor. I think at best that it is imprecise language in the district court's opinion because on the substance, what we see in the opinion is a very — it is a consideration of each of the defendants separately. And also, GIS did not move for fees against RPM. GIS's motion was solely against Guardian, and so there was no determination before the to be made about whether GIS prevailed over RPM at all. That's an interesting point, that GIS didn't move for fees against RPM. You think that maybe had some role in what the district court specifically described in its written work when it was more focused on Guardian? Well, RPM did move as against GIS, and so I think the court very carefully considered whether RPM had carried its burden of showing that under Section 1717, it was a prevailing party. And we think that, of course, that decision should be affirmed. In my home circuit, a voluntary dismissal would be — the defendant would be the prevailing party in those circumstances, and other circuits have reached the same conclusion. I'm not quite sure if we're looking at federal law here or state law, but it seems to me the weight of authority would be contrary to what the district court did here. Yes, Your Honor, and thank you. I will move to that point of contention. With respect to the abandoned claims, we do believe that the district court properly determined these were abandoned under Section 1717, and therefore that there was no prevailing party. We believe that the appellants are misstating the law on this. We would refer your honors to the Farrow case, which we don't believe requires an affirmative statement, and we don't believe it requires abandonment before trial. What the Farrow case is saying and what the law reflects is that courts in California are looking to what was the plaintiff's role in bringing about the abandonment. Was it involuntary in the nature of an opposed dismissal, or was it voluntary in the nature of the plaintiff is letting this claim go? And the district court here actually presided over motions to amend the judgment after the first trial, initially on the first, second, eighth claims. But so that's the problem. You go through the first trial, you don't announce anything about these claims being abandoned, and then defendants presumably have to prepare for it and be ready to defend against it. So then — and then after the fact, you're saying, oh, voluntary dismissal. It doesn't seem fair or right or a right statement of the facts. There's a couple of things there, Your Honor. The first is that the appellants are not correct that we never made any affirmative statement with respect to the abandonment of these claims. I would refer Your Honors to — I may have to supplement with the exact record citations, but there is a footnote in our — in our post-trial equitable rulings that indicates — Well, that's post-trial, though. Yes. However — But aren't — I mean, they have to be ready to prepare for it during trial. The law in California, as we would submit it, is that even under the appellant's cases that they are citing, including the Emma court case, the dividing line is submission to the fact-finder. Has a final decision been rendered on this? And that's what the California courts are looking to in their judgment and memorialization of the exception to the American rule in Section 1717. So where claims are abandoned —  Wasn't it submitted to the fact-finder in the first trial? We — it was not. We withdrew it from — there was never any determination rendered on these claims. Well, that's the problem, though. You just — no one knew that, though. They did know that, Your Honor, though, because we put in our post-trial papers that we were not submitting them. So no — these were never adjudicated. The legal sufficiency, I should say, of these claims was never tested. And so having — But you would agree that the defendants in that case, that first trial, were prejudiced by the fact that they had no notice that these claims are not being pursued. In terms of the specific analysis under Section 1717, we would maintain that these claims are still considered abandoned because under Barrow — But do you agree that the defendants had to prepare and they would be prejudiced by the fact they didn't know that you were going to withdraw these claims? There wouldn't be prejudice within the meaning of Section 1717. I understand Your Honor's point about perhaps they had to expend resources in whatever manner they were presented in the trial. But with respect specifically to Section 1717, that's not what the Court's looking to. And we do believe that even the policy considerations behind Section 1717's finding that there is no prevailing priority on abandoned claims still apply even if the claims are abandoned at the post-trial stage. I would also note to Your Honors that with respect to RPM, we took the position here and in the district court that these claims were actually abandoned prior to the post-trial ruling stage. We took the position that by not submitting them for any jury determinations and not including them on our verdict form, so they were abandoned earlier than that. I'm going to ask, did Guardian or RPM ask and the district court ask for, you know, a discount or an offset for the fees that they presumably generated in preparing a defense to the abandoned claims? With respect to RPM, Your Honor, we already excised those fees from our attorney's fees motion. So our fees motion lays out in our supporting declarations the amounts that we are not seeking fees on. And one of them was the RPM alter ego issue. I know, but they generated fees. Did they ask for a discount or an offset for the fees that they generated? Oh, I apologize, Your Honor. Did they ask below, did the appellant's counsel ask below to the district court for an offset? And in terms of their attorney's fees motion, I believe their argument was that we had improperly apportioned the claims and they pointed only to the Bob's agreement and no other claims. And let me ask you this, as my colleague asked about the prejudice to the to RPM and to Guardian, if the abandonment was not made clear prior to the first trial, what was the state of the law with respect to abandoned claim, with respect to the California Court of Appeal and the BAP? Before that, in other words, what was the requirement for abandonment before the first trial in this case? My understanding is that the requirement for abandonment is the law as we've stated it, that it must be that what the courts look to is what was the plaintiff's role in bringing it about here? It was very clear that this was of our own accord. We were abandoning these claims. And secondly, that it the dividing line in terms of timing, if any, is whether a final decision has been rendered on the merits. And it's because what Section 1717 looks to is the nature of having prevailed. But don't those cases all have notice requirements before trial? Actually, the Farrow case was a circumstance where the claim was not abandoned until after the start of trial. Farrow. OK. Yes. So from your perspective, of course, unlike my friend from Colorado, we're dealing with the 1717, which is a California statute. That's what we're really talking about here. And what I'm struggling with, it seems to me that the California Court of Appeals decision and the BAP decision don't require notice in advance to have an abandonment. But is that correct or is your opponent correct? We believe that is correct, Your Honor. I would also point Your Honors to the Brozio and Ennis cases, which are circumstances where there was no, quote, unquote, affirmative statement. Brozio involved removing claims in an amended proof of claim. And Ennis involved not including claims in a joint pretrial statement, both of which those were considered abandoned. With my limited time left, I would like to point Your Honors just to a couple of things. The first is that Mr. Davis is not correct that we opposed dismissal with prejudice because we wanted to preserve the right to pursue those claims. I would direct Your Honors to the portion of the supplemental record starting at 533, which indicates that we did not intend to pursue the alter ego claims further against RPM. And with respect to the GIS v. RPM issue, we'd refer Your Honors to our papers. This is not a circumstance under SHU because there are abandoned claims at issue. There is not a complete victory, and therefore, they are not entitled to attorneys. So with respect to what became known as the abandoned claims, you did not try to leave those open by having a dismissal without prejudice. Is that correct? We did request a dismissal without prejudice, but it was not for the purpose of trying to preserve them open for relitigation. Why would it not then be with prejudice? Because we didn't believe that we should be abandoning our right to have them dismissed with prejudice at the outset, despite that that's what the appellants were requesting at the time. Okay. Other questions about my colleague? No, thank you. Okay. Thank you, Your Honors. All right. Mr. Davis. Thank you, Your Honor. Respectfully, I don't believe you can just read out the claims tally and just write it out of her opinion because, as I've said, it was an unqualified defense victory against a $72 million demand, $72 million demand in front of the jury. And the only reason she found RPM not to be the prevailing party is because she combined the claims of the defendants. Otherwise, it would be absolutely clear as a matter of law that RPM was the prevailing party. Let me ask you this, counsel. If you were on our panel and we had to write a disposition that did what you want, what would you be asking us to say? We'd be asking you to say, Your Honor, number one, that the court is directed to enter an order that RPM is the prevailing party with respect to GIS, and then number two, that the results between Guardian and GIS are so mixed that there is no prevailing party. So that's what we would ask this court to do. With respect to the abandonment issue, the court asked about what was the authority of the DNJ case was in 1986 prior to the trial in this case. Here is the standard for abandonment. For a dismissal to be considered voluntary, it must be predicated on a clear, unequivocal, and express intent to abandon an action. Such intent must be demonstrated to the court by way of a motion to dismiss, stipulation to the parties, or some other form of express intent on the record. Which case is that, please? That's DNJ v. Farrow, Your Honor, 1986 California case. And do you agree in that case the notice was provided during, at least at the EVA trial? It looks like it was during an examination of the first witness. Right, exactly. So the parties knew. That's a during trial, Matt. This is obviously even opposing counsel understands that it was post-trial. Finally, Your Honor. Can I ask one question? Can you speak to, was your clients prejudiced in any way because of the lack of notice of these abandoned claims? Absolutely. We had to completely prepare as though they specifically said on the record, we're not abandoning any claims. The trial went forward. We had no information of any kind that they were abandoning those claims until post-trial. So we absolutely were prejudiced. Finally, with respect to 1717b2, there's a fundamental legal misreading of that statute by the court below. 1717b2 only applies if, where an action has been voluntarily dismissed, there shall be no prevailing party for the purposes of this section. The cases under that statute, including Frog Creek, specifically say that means all the contract claims. You can't pick and choose. You can't say, I'm to dismiss this one contract claim. So you can say there's no prevailing parties. So you opposing side can't get attorney's fees. It's all or nothing. The policy behind the statute was they don't want to encourage people to maintain frivolous or weak claims because they're afraid if they dismiss, there'll be an attorney's fees claims. You can't piecemeal dismiss and maintain it. So here, that's what happened. The GIS and the district court agreed that by dismissing some piece of the case, you could no attorney's fees for us because it's then, quote, unquote, no prevailing party. But they get attorney's fees as prevailing parties on the balance. That's not what 1717b2 provides for. And the district court below completely ignored that and said you could have piecemeal prevailing parties on one contract, which we disagree with. Questions by my colleague. Thanks to both counsel for your arguments. Very helpful. The case just argued is submitted.
judges: Tymkovich, SMITH, BUMATAY